UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DAN VOLENTINE, ET AL                CIVIL ACTION NO. 09-cv-1865

VERSUS                              JUDGE HICKS

RAEFORD FARMS OF LOUISIANA,         MAGISTRATE JUDGE HORNSBY
LLC, ET AL

MEMORANDUM RULING

**Introduction**

Dan Volentine was a farmer in Claiborne Parish. He entered into a Hatching Egg Production Contract with Raeford Farms of Louisiana, LLC. The contractual relationship ended. Volentine and his wife ("Plaintiffs") filed suit in state court against Raeford, allegedly related companies, and two company officials. Plaintiffs asserted only state law claims, but Defendants removed the case based on an assertion that a special venue provision in the Packers and Stockyard Act ("PSA") provided a right to remove the case and, in the alternative, that Plaintiffs had alleged claims that arise under the PSA. Plaintiffs have filed a Motion to Remand (Doc. 11) that is now before the court.

**No Federal Question Jurisdiction**

The court will first address Defendants' assertion that Plaintiffs have alleged claims that arise under the federal PSA. Plaintiffs' state court petition alleges that Mr. Volentine mortgaged his family home and land to purchase the facilities necessary to house chickens and produce eggs in accordance with the contract. He alleges that Raeford officials Samuel

LeNarz and Kelly Garris developed personal animosity toward him and acted in bad faith. Plaintiffs allege that the Raeford officials cited deficiencies in their operation and threatened to withhold the next flock of chickens. Plaintiffs allege that they spent more than $100,000 to upgrade their operations, but company officials continued to find fault.

Plaintiffs allege, for example, that Raeford Farms allegedly refused shipment of chickens because Plaintiffs did not implement a telephone alarm system that would alert Mr. Volentine by cell phone if there was a power failure in a chicken house. Plaintiffs allege that they pressed to have the alarm installed, but they discovered that Raeford officials told the president of the alarm installation company that the Volentine chicken houses were not a priority in receiving this system. Plaintiffs allege that Raeford officials similarly attempted to delay the installation of a new feed system.

Plaintiffs allege that Raeford eventually terminated their contract and refused to allow Mr. Volentine to assign the contract to his son (because Raeford officials also had personal issues with the son). Plaintiffs allege that the termination of the contract caused them to lose their family home and land, and force them to live with family due to economic hardship.

Plaintiffs' petition relies solely upon state law causes of action that are set forth in specific counts: Breach of contract; tortious interference with contractual rights; intentional interference with business relations; and the Louisiana Unfair Trade Practices Act. It does not appear the petition makes any reference to the PSA or any other federal law. Plaintiffs

deny that the petition includes any such allegations, and Defendants have not pointed to any specific invocation of federal law.

Defendants nonetheless argue that Plaintiffs have asserted claims that arise under the PSA because the facts set forth in the petition *could* state claims under the PSA. Under the well-pleaded complaint rule, a federal court has original or removal jurisdiction only if a federal claim is presented on the face of the well-pleaded complaint. There is no federal claim presented if the plaintiff properly pleads only a state law cause of action. And the possibility that a plaintiff could have asserted a federal claim does not permit federal question removal. A plaintiff is master of his complaint and may generally allege only a state law cause of action even where a federal remedy is available. Bernhard v. Whitney National Bank, 523 F.3d 546, 551 (5th Cir. 2008). Plaintiffs did not allege a federal claim and relied solely on state law.

An exception to the well-pleaded complaint rule is the artful pleading doctrine. Under that principle, removal is permitted even though the plaintiff has relied exclusively on state law if there is a federal law that completely preempts the plaintiffs' state law claim. Bernard, 523 F.3d at 551. Defendants state in their memorandum that they "agree (with Plaintiffs) that the PSA does not completely preempt State law." Doc. 13, p. 9. Accordingly, there is no basis for removal based on the traditional principles of federal question jurisdiction.

**PSA Venue Provision**

Defendants concede that the PSA does not completely preempt state law, but they argue that a provision of the PSA requires this action be heard in federal court regardless of governing law. They cite 7 U.S.C. § 197b, which provides:

(a) Location of forum

The forum for resolving any dispute among the parties to a *poultry growing arrangement* or swine production or marketing contract that arises out of the arrangement or contract shall be located in the Federal judicial district in which the principle (sic) part of the performance takes place under the arrangement or contract. (emphasis added)

(b) Choice of law

A poultry growing arrangement or swine production or marketing contract may specify which State's law is to apply to issues governed by State law in any dispute arising out of the arrangement or contract, except to the extent that doing so is prohibited by the law of the State in which the principal part of the performance takes place under the arrangement or contract.

The PSA defines a poultry growing arrangement as "any growout contract, marketing agreement, or other arrangement under which a poultry grower raises and cares for live poultry for delivery, in accord with another's instructions, for slaughter." 7 U.S.C. § 182(9). The term "poultry grower" used in that definition is defined in Section 182(8) as a person engaged in the business of "raising and caring for live poultry for slaughter by another," whether the poultry is owned by the grower or another.

The parties arguments focus on whether the contract at issue is a "poultry growing arrangement" within the meaning of the statute. Plaintiffs contend that the contract for

providing hatching eggs does not meet the definition because it did not call for Plaintiffs to provide live poultry for slaughter. Defendants argue that the contract falls under the statutory definition because spent hens were gathered for slaughter, and the hatching eggs were intended to eventually provide poultry for slaughter.

All parties assume that this case would be removable by virtue of the PSA venue statute if the contract fits the definition of a poultry growing arrangement. The court does not believe that to be the case. The venue provision is found within Part A of Sub-chapter II of the PSA. The Sub-chapter makes it unlawful, for example, for any live poultry dealer to use any deceptive or unjustly discriminatory practice, manipulate or control prices, or create a monopoly. 7 U.S.C. § 192. The Sub-chapter also contains a provision that creates a statutory trust on poultry and derived poultry products for the benefit of persons who make cash sales of poultry to live poultry dealers. The statute is intended to avoid the burden on commerce of certain financing arrangements that grant security interests in poultry. 7 U.S.C. § 197. The choice of law and venue statute cited by Defendants comes near the end of the Sub-chapter and provides that the forum for resolving any dispute among the parties to a poultry growing arrangement shall be the federal district in which the principal part of the performance takes place under the contract.

The venue provision at issue was enacted in 2008, and the court has not located any jurisprudence that has addressed whether it gives rise to the right to remove a case from state court that asserts only state law claims but happens to arise out of a poultry growing

arrangement. The court finds that the most reasonable reading of the statute is that it does not give rise to the right to effect such removals. It would be fairly extraordinary for Congress to allow the removal of state court claims when there is not complete preemption or any other grounds for the exercise of subject-matter jurisdiction, and such an extraordinary provision should be written in express terms. There is no such clear expression in the statute at issue. The most reasonable reading of the statute is that it provides a mandatory venue for cases brought pursuant to the PSA (and Plaintiffs do not pursue such a claim in this case) that regard a dispute among the parties to a poultry growing arrangement. The provision is designed to locate venue where the principal part of the performance takes place, which favors the farmer or producer, and protects him from having venue secured and/or moved to the far-away location of the headquarters of large corporations that are parties to the contract. Because the court does not read Section 197b to permit removal of the state law claims presented in Plaintiffs' petition, it need not reach whether the contract at issue is a poultry growing arrangement within the definitions found in the PSA. For these reasons, Plaintiffs' **Motion to Remand (Doc. 11)** will be **granted** by separate order.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 24th day of February, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE